## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**CHASSITY THOMAS,**
**by and through her legal guardian,**
**NINA PHILLIPS;**

      Plaintiff,

vs.                                           Case No.:

**ILLINOIS CENTER FOR**
**REHABILITATION AND EDUCATION,**
an Illinois not for profit corporation;
**JEWISH VOCATIONAL SERVICES,**
an Illinois not for profit corporation;
**JEWISH FEDERATION OF METROPOLITAN,**
an Illinois not for profit corporation; and **EDWARD FORD**

      Defendants.

_____/

## <u>COMPLAINT</u>

COMES NOW, Plaintiff, **CHASSITY THOMAS,** by and through her legal guardian, NINA PHILLIPS, ("THOMAS"), individually, and hereby files this Complaint by and through the undersigned counsel against the above-named Defendants, **ILLINOIS CENTER FOR REHABILITATION AND EDUCATION**, ("REHAB CENTER"); **JEWISH VOCATIONAL SERVICES**, ("JVS"); **JEWISH FEDERATION OF METROPOLITAN**, ("JFM"), and Defendant **EDWARD FORD** ("FORD"); for causing the sexual assault and battery of **CHASSITY THOMAS**, on June 27, 2019, for which Plaintiff now seeks damages, and in support thereof alleges as follows:

## VENUE, JURISDICTION, AND PARTIES

1.     At all material times hereto, Plaintiff, CHASSITY THOMAS, (hereinafter "THOMAS") and her legal guardian NINA PHILLIPS were and remain residents of Cook County, Illinois.

2.     Defendant, ILLINOIS CENTER FOR REHABILITATION AND EDUCATION, (hereinafter "REHAB CENTER"); is an Illinois not for profit corporation, which operates as a residential school for students with severe physical disabilities and other health impairments, which at the time of incident was located at: 1151 South Wood, Chicago, Illinois 60611. Defendant REHAB CENTER was at all times material hereto, operating and conducting business in Chicago, Illinois; and as such, was responsible for the actions and omissions of its agents, employees and students; including establishing policies regarding the hiring, training, supervision and retention of its employees, establishing policies regarding the supervisions of its own students, and establishing policies to ensure the safety of all persons inside its in premises, pursuant to Illinois law.

3.     Defendant, JEWISH VOCATIONAL SERVICES, (hereinafter "JVS"), is an Illinois not for profit corporation, organized and existing under the laws of the state of Illinois, which operates as an employment agency located at: 216 West Jackson Blvd, Suite 700, Chicago, Illinois 60606, and specializes in finding employment positions for disabled persons. At all times material hereto, JVS was operating and conducting business in Chicago, Illinois, which includes but is not limited to: ensuring their employees were being placed in a safe work environment, and performing screenings to ensure the safety of their employees as well as the safety of the facilities with which it contracted.

4.     Defendant, JEWISH FEDERATION OF METROPOLITAN, (hereinafter "JFM"), is an Illinois not for profit corporation organized and existing under the laws of the state of Illinois. At all times material hereto, JFM was operating and conducting business in Chicago, Illinois, which includes but is not limited to being a source of financial support for JVS, and being in partnership with JVS.

5.     At all times material hereto, Defendant FORD, was in the care, custody and control of Defendant REHAB CENTER as a participant of their residential program, and was at all times material hereto and remains a resident of Cook County, Illinois.

6.     All of the acts or omissions giving rise to this action occurred in the City of Chicago, Cook County, Illinois.

7.     Venue is proper in Cook County, Illinois as the incident arises out of Cook County, and Defendants operate businesses and/or a governmental agency and/or reside and/or work in Cook County.

8.     Jurisdiction is proper in this Court pursuant to: Americans with Disabilities Act, Title II, Civil Rights Act Title II and Title VII,  This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

## FACTUAL ALLEGATIONS

8.     Plaintiff, THOMAS, is a 32-year-old woman who suffers from down syndrome along with visual and verbal impairments. JVS is an employment agency who specializes in finding employment positions for disabled persons. The REHAB CENTER utilized the janitorial services of JVS, and THOMAS was placed on its premise as a janitorial worker.

9.     JVS was fully aware of the range and nature of THOMAS's verbal and visual disability yet assigned THOMAS to work as a janitor inside the men's locker room at the REHAB

CENTER. In addition, JVS assigned THOMAS as a janitor at the REHAB CENTER and failed to require that the REHAB CENTER properly supervise THOMAS to ensure her safety.

10.     During her employment at the REHAB CENTER, a student by the name of Edward Ford ("Ford"), who was recently released from prison and who has visual impairments, but not mental impairments, was in the care and control of the REHAB CENTER. On various occasions, Ford made it known to other students of the REHAB CENTER, as well as other employees and staff members, that he had just been released from prison and "needed some," referring to sexual intercourse, including supervisors. As such, REHAB CENTER supervisors and employees had actually knowledge that he was sexually harassing staff and/or other persons on the premises with his sexualized and inappropriate conversation and remarks.

11.     Toni Butler ("Butler"), a REHAB CENTER dorm room counselor, was made aware of these comments and then reported it to the REHAB CENTER Superintendent; however, Ford was not removed from the REHAB CENTER to protect employees, students, and persons on its premises.

12.     The REHAB CENTER's physical education instructor had also been previously made aware that Ford would wait in the locker room for extended periods of time when THOMAS was scheduled to clean the men's locker room. Despite this knowledge, the physical education instructor did not request that Ford leave the premises, nor did he inform a superior that Ford was hanging around the locker room.

13.     On June 27, 2019, THOMAS had been assigned to clean the men's locker room alone. Ford cornered THOMAS in the locker room, and with his fingers penetrated her vagina and inserted his penis into her buttocks. All the while, there were no REHAB CENTER agents and/or employees to intervene and stop the attack.

14.     After the incident, THOMAS desperately tried to communicate what she had just endured, but due to her disability it was difficult to articulate and staff members at the REHAB CENTER ignored her and did not make an effort to ascertain the cause of her fear and unrest. JVS retaliated against her for attempt to seek protection as a Black, disabled woman, attempting to report and act of sexual battery against her person and punished her by suspending her from work.

15.     On June 28, 2019, THOMAS was able to communicate that Ford had sexually battered her to a REHAB CENTER employee whose last name is Butler.  The Illinois State Police were called, and THOMAS was taken the University of Illinois Emergency room where a rape kit was performed.

16.     As of the date of the subject incident, THOMAS' behavior has drastically changed as she began to act out after and exhibited clear signs of trauma, she is unable to sleep in complete darkness and requires that a night light be left on. THOMAS also has constant nightmares and otherwise exhibits symptoms of severe psychological distress.

17.     The REHAB CENTER had actual prior knowledge of Ford's history as well as the comments Ford was making about "needing some," in reference to sexual intercourse. This prior knowledge put staff members and the Superintendent on notice that Ford posed a danger to everyone inside its facility. Not only were other staff members aware, but Butler, the dorm counselor, personally informed the REHAB CENTER'S Superintendent of these threatening comments.

18.     Despite the REHAB CENTER's actual knowledge, Ford was allowed to stay at the REHAB CENTER unsupervised. Staff members of the REHAB CENTER had actual knowledge that Ford would purposely stay in the men's locker room longer than he needed to be to wait for THOMAS.

19.     The REHAB CENTER failed to take reasonable and adequate safety and security measures to prevent the sexual abuse of their employees and/or staff and business invitees. Ford knowingly and willingly took advantage of THOMAS and her inability to escape his advances, and actually and proximately caused the damages and injuries suffered by THOMAS.

20.     The REHAB CENTER's numerous actions and omissions actually and proximately caused THOMAS' physical injury and severe emotional distress and affecting her day-to-day life and will more likely than not continue into the future and be permanent in nature.

21.     In addition, JVS had actual prior knowledge of THOMAS' disability as well as her verbal and visual impairments. This prior knowledge along with the fact that JVS was in the practice of placing people with disabilities into several different assignments with different facilities, put the agents and/or staff at JVS that THOMAS' placement would require extra responsibility in determining that it was adequately safe for THOMAS to work there.

22.     Despite JVS' knowledge of the circumstances surrounding THOMAS' disability and without regard to her safety, JVS placed THOMAS to work at a facility without any investigation into the facility's safety record, safety policies, and/or any investigation as to the students that were matriculated at the REHAB CENTER.

23.     JVS did not require the REHAB CENTER to notify JVS when students or persons on its property and/or in their custody and/or control had criminal records or posed a threat of sexual and/or physical violence to others.

24.     JVS had a duty to properly screen the locations in which it placed its employees to ensure their safety. Specifically, JVS placed THOMAS at the REHAB CENTER as a janitor in the men's locker room without any safety requirements, policies and/or procedures that would ensure THOMAS' safety.

25.     JVS failed to take reasonable and adequate safety and security measures to prevent the sexual abuse of their employees and/or staff. JVS failed to implement policies and/or procedures to keep mentally disabled employees safe and/or to prevent their exposure to sexual battery and physical violence during the course and scope of their employment. JVS failed to take reasonable safety and security measures to protect THOMAS during her employment and prevent an attack on her person that resulted in her sexual abuse and battery.

26.     As a direct and/or proximate result of the REHAB CENTER and JVS' actions and/or inactions stated above, THOMAS suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, severe psychological injury, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life. As aforementioned, the REHAB CENTER and JVS are actually and proximately liable for the injuries and damages sustained by THOMAS.

27.     Plaintiff CHASSITY THOMAS, by and through her legal guardian NINA PHILLIPS, is entitled to damages and will seek economic, compensatory, severe psychological injuries, pain and suffering, and punitive damages in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00 including interest, together with costs and reasonable attorney's fees incurred herein and such other relief as the Court deems just and equitable and files the instant action to demand an award for injuries and damages against Defendants REHAB CENTER, JVS, JFM, and FORD.

### COUNT I
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### AGAINST JVS and JVM

28.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

29.     The Americans with Disabilities Act of 2008 (hereinafter "ADA"), prohibits any individual with a disability to be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by such entity. Such benefits include, but are not limited to, being afforded the same protections and safety precautions while inside the premises of her employer.

30.     Section 5.01 of the ADA also finds liability against, employers participating in a contractual or other arrangement that results in discrimination against a person with a disability. Specifically, the ADA states that an employer may be liable not only for its own discrimination, but also for the discrimination of third parties, and that an employer commits discrimination if the employer participates in a contractual or other relationship that has the effect of discriminating against a qualified applicant or employee with a disability. The ADA holds both the employer and that third party responsible for discrimination that occurs to its employees regardless of whether the entity that perpetrates the discrimination is the employer or some other entity with which the employer has contractual dealings.

31.     THOMAS is a black female with down syndrome, in addition to visual and verbal impairments, who was an employee of JVS and JVM was treated less favorably than her non-disabled and non-black colleagues. Due to the JVS and JVM's contractual relationship with the REHAB CENTER, THOMAS performed janitorial services on its property, and REHAB CENTER, JVS, and JVM are liable for discrimination against THOMAS. JVS and JVM specifically assigned her and had actual knowledge that she was cleaning the men's locker room by herself, that she needed heighted protection due to her disability, and they failed to take any precautions to protect her while performing her janitorial services, did not require that the REHAB

CENTER close the locker room during cleanings and/or require the REHAB CENTER to have another person to be present in the locker room to ensure her safety.

32.     As a disabled worker, and under the ADA, THOMAS was entitled to the same benefits and protections, if not more protection, as her peers who did not have a disability, that were also employed through JVS and JVM. Due to THOMAS' disability, JVS and JVM purposely ignored the need to screen and/or investigate the THOMAS' placement at the REHAB CENTER, and failed to take the adequate safety measures to ensure THOMAS' safety while she performed her janitorial services at the REHAB CENTER.

33.     JVS and JVM decided to take no action when it came to ensure that this placement would not pose a danger to THOMAS' safety. JVS knew of THOMAS' disability, and visual and verbal impairments and assumed responsibility for her employment when they assigned her the position and took charge of her safety related to her employment.

34.     JVS and JVM could have prevented the sexual battery of THOMAS had they fulfilled their duty in investigating and/or screening the facilities where they place their employees. JVS and JVM allowed the REHAB CENTER and Ford access to THOMAS by wrongfully placing her into a dangerous and unsupervised environment. JVS and JVM allowed THOMAS to be sexually battered because they did not deem THOMAS was worth protecting like they protect their other non-disabled employees and/or persons they were in charge of JVS and JVM's lack of care in investigating the facilities in which they placed their disabled employees, lack of action in preventing a sexual battery against THOMAS, actually and proximately caused THOMAS' rape. When THOMAS' attempted to report the sexual battery to persons at the REHAB CENTER, instead of investigating what transpired and what was causing her distress, they retaliated against

9

her and punished her for trying to report that she was a victim of sexual battery and suspended her for two days.

35.     As a direct and proximate result of JVS and JVM's actions and omissions in violation of the ADA, THOMAS suffered significant damages and emotional injuries including mental and emotional damage and trauma, humiliation, damage to her personal reputation, mental distress, and anguish for which JVS and JVM are liable.

36.     Plaintiff, THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

37.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendants JVS, and JVM in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

## COUNT II
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT REHAB CENTER

38.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

39.     The Americans with Disabilities Act of 2008 (hereinafter "ADA"), prohibits any individual with a disability to be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by such entity. Such benefits include, but are not limited to, being afforded the same protections and safety precautions while inside the premises of her employer.

40.     Section 5.01 of the ADA also finds liability against, employers participating in a contractual or other arrangement that results in discrimination against a qualified employee with a disability. Specifically, the ADA states that an employer may be liable not only for its own discrimination, but also for the discrimination of third parties, and that an employer commits discrimination if the employer participates in a contractual or other relationship that has the effect of discriminating against a qualified applicant or employee with a disability. The ADA holds both the employer and that third party responsible for discrimination that occurs to its employees regardless of whether the entity that perpetrates the discrimination is the employer or some other entity with which the employer has contractual dealings.

41.     THOMAS is a black female with down syndrome, in addition to visual and verbal impairments, who was an employee of JVS and JVM and was treated less favorably than her non-disabled and non-black colleagues. Due to the JVS and JVM's contractual relationship with the REHAB CENTER, THOMAS performed janitorial services on its property, and REHAB CENTER, JVS, and JVM are liable for discrimination against THOMAS. JVS and JVM specifically assigned her and had actual knowledge that she was cleaning the men's locker room by herself, that she needed heighted protection due to her disability, and they failed to take any precautions to protect her while performing her janitorial services, did not require that the REHAB CENTER close the locker room during cleanings and/or require the REHAB CENTER to have another person to be present in the locker room to ensure her safety.

42.     As a disabled worker, and under the ADA, THOMAS was entitled to the same benefits and protections, if not more protection, as her peers who did not have a disability, that whose employment services were utilized by Defendant REHAB CENTER. Due to THOMAS'

disability, the REHAB CENTER, and failed to take the adequate safety measures to ensure THOMAS' safety while she performed her janitorial services at the REHAB CENTER.

43.     JVS decided to take no action when it came to ensure that this placement would not pose a danger to THOMAS' safety. JVS knew of THOMAS' disability and verbal impairments and assumed responsibility for her employment when they assigned her the position and took charge of her safety related to her employment.

44.     REHAB CENTER could have prevented the sexual battery of THOMAS had it properly supervised its residential students including FORD, who was recently released from prison and posed a known imminent danger of sexual violence to persons on the property. REHAB CENTER also failed to establish proper policy and protocol for persons with disabilities performing janitorial services on its property, including ensuring that disabled female janitors were not left alone to clean the men's locker room. REHAB CENTER gave Ford access to THOMAS by allowing her to clean the men's locker room alone and without supervision, and by allowing him to remain for extended periods of time unsupervised in the locker room. REHAB CENTER allowed THOMAS to be sexually battered because they did not deem THOMAS was worth protecting like they protect their other non-disabled employees and/or persons performing services on their property, their actions and inactions actually and proximately caused THOMAS' rape.

45.     As a direct and proximate result of REHAB CENTER's actions and omissions in violation of the ADA, THOMAS suffered significant damages and emotional injuries including mental and emotional damage and trauma, humiliation, damage to her personal reputation, mental distress, and anguish for which JVS is liable.

46.     Plaintiff, THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has

manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

47.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendants, REHAB CENTER in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AGAINST JVS and JVM BASED ON RACE, SEX, and RETALIATION

48.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

49.     Title VII of the Civil Rights Act prohibits employer from discriminating based on race and sex against employees. At all times material hereto, Defendant JVS and JVM employed African American female Plaintiff THOMAS, and discriminated against her based on her sex and race, and treated her differently from their non-Black non-female employees.

50.     THOMAS is a black female with down syndrome, in addition to visual and verbal impairments, who was an employee of JVS and JVM was treated less favorably than her non-black colleagues and non-female colleagues. THOMAS was consistently assigned less favorable job duties, including she was assigned to clean the men's locker room at Defendant REHAB CENTER by herself, and with no supervision. JVS and JVM failed to place any protective measures in place to protect her person, including but not limited to:

    (a) failed to implement safety precautions for THOMAS;

13

(b) failed to properly train its employees and/or agents in procedures that would assure the safety of its disabled employees while assigned at other facilities and prevent sexual misconduct;

(c) failed to implement policies and/or procedures that would prevent such misconduct;

(d) failed to implement policies and/or procedures to ensure that the REHAB CENTER had a policy to require the locker room to be vacant while it was being cleaned;

(e) failed to provide THOMAS with signs to close the restroom, or objects to place in the doorway to obstruct entrance to the bathroom during cleaning, since they were aware that THOMAS, a disabled woman was assigned to clean it;

(f) failed to establish a policy that required the supervision of its own employees, especially the mentally disabled persons that were assigned to clean the locker room of the opposite sex;

(g) failed to promulgate adequate policies and procedures to protect its female and/or African American employees;

(h) failed to require the REHAB CENTER to report any person on its premises with a known criminal history and/or any known sexual misconduct to JVS for the safety of its employees;

(i) failed to require more than one employee clean the restroom together for safety, knowing that generally the employees who worked as janitors inside the facility are disabled, Black, and female; and,

(j) such other failures as may be revealed through discovery.

51.    JVS and JVM decided to take no action when it came to ensure that this placement would not pose a danger to THOMAS' safety as Black female disabled employee.  JVS and JVM

14

could have prevented the sexual battery of THOMAS had they fulfilled their duty in investigating and/or screening the facilities where they place their employees. JVS and JVM allowed the REHAB CENTER and Ford access to THOMAS by wrongfully placing her into a dangerous and unsupervised environment. JVS and JVM allowed THOMAS to be sexually battered because they did not deem THOMAS was worth protecting like they protect their other non-Black and non-Female employees, and JVS and JVM's lack of action in preventing a sexual battery against THOMAS, actually and proximately caused THOMAS' rape. When THOMAS attempted to report the sexual battery to persons at the REHAB CENTER, instead of investigating what transpired and what was causing her distress, they retaliated against her and punished her for trying to report that she was a victim of sexual battery and that a violent crime was committed against her person based on her race and sex, Defendants JVS and JVM suspended her for two days.

52.     As a direct and proximate result of JVS and JVM's actions and omissions in violation of Title VII of the Civil Rights Act, THOMAS suffered significant damages and emotional injuries including mental and emotional damage and trauma, humiliation, damage to her personal reputation, mental distress, and anguish for which JVS and JVM are liable.

53.     Plaintiff, THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

54.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendants JVS, and JVM in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

**COUNT IV**
**VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT AGAINST REHAB CENTER**
**BASED ON DISCRIMINATION IN A PUBLIC ACCOMODATION BASED ON RACE**

55.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

56.     Title II of the Civil Rights Act prohibits REHAB CENTER from discriminating against persons based on race in a public accommodation.  At all times material hereto, Defendant REHAB CENTER discriminated against African American female Plaintiff THOMAS, based on her race, and treated her differently from their non-Black non-female persons utilizing its public accommodation.

57.      THOMAS was consistently assigned less favorable job duties on REHAB CENTER's premises, including she was assigned to clean the men's locker room at Defendant REHAB CENTER by herself, and with no supervision.  Defendant REHAB CENTER failed to place any protective measures in place to protect her person, including but not limited to:

    (a) failed to implement safety precautions for THOMAS;

    (b) failed to properly train its employees and/or agents in procedures that would assure the safety of its Black female disabled employees while assigned at other facilities and prevent sexual misconduct;

    (c) failed to implement policies and/or procedures that would prevent such misconduct;

    (d) failed to implement policies and/or procedures to ensure that the REHAB CENTER had a policy to require the locker room to be vacant while it was being cleaned;

(e) failed to provide THOMAS with signs to close the restroom, or objects to place in the doorway to obstruct entrance to the bathroom during cleaning, since they were aware that THOMAS, a disabled woman was assigned to clean it;

(f) failed to establish a policy that required the supervision of its own employees, especially the mentally disabled persons that were assigned to clean the locker room of the opposite sex;

(g) failed to promulgate adequate policies and procedures to protect African American persons on its property;

(h) failed to report any person on its premise with a known criminal history and/or any known sexual misconduct to REHAB CENTER for the safety of persons present in its accommodations;

(i) failed to require more than one employee clean the restroom together for safety, knowing that generally the employees who worked as janitors inside the facility are disabled, Black, and female; and,

(j) such other failures as may be revealed through discovery.

58.     REHAB CENTER decided to take no action when it came to ensure that this placement would not pose a danger to THOMAS' safety as Black female disabled person on its property. REHAB CENTER could have prevented the sexual battery of THOMAS had they removed FORD from their property, adequately supervised him, prevented him from loitering in the men's locker room without supervision, and if it had prevented Ford access to THOMAS by wrongfully placing her into a dangerous and unsupervised environment. REHAB CENTER allowed THOMAS to be sexually battered because they did not deem THOMAS was worth protecting like they protect non-Black persons on their property, and REHAB CENTER'S lack of

action in preventing a sexual battery against THOMAS, actually and proximately caused THOMAS' rape.

59.     As a direct and proximate result of REHAB CENTER's actions and omissions in violation of Title II of the Civil Rights Act, THOMAS suffered significant damages and emotional injuries including mental and emotional damage and trauma, humiliation, damage to her personal reputation, mental distress, and anguish for which REHAB CENTER is liable.

60.     Plaintiff, THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

61.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendant REHAB CENTER in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

## COUNT V
## PREMISES LIABILITY AGAINST DEFENDANT, REHAB CENTER

62.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

63.     The REHAB CENTER owed a duty to THOMAS to take precautions to protect her from foreseeable harm based on premise liability based upon Illinois Statute 740 ILCS 130/1 & 2.

64.     At all times material hereto, Defendant REHAB CENTER was in control, possession and/or was the owner of the premises located at:  1151 South Wood, Chicago, Illinois 60611, and owed the duty of reasonable care under the existing circumstances of the property to keep and maintain the premises in a reasonably safe condition for all persons on its premises.

65.     At all times relevant hereto, Defendant, REHAB CENTER knew that Ford, a student within its care and control, was creating an unsafe environment for all persons inside its premises. Specifically, REHAB CENTER has actual knowledge that Ford was recently released from prison, making statements of his desire to engage in sexual activity and otherwise sexually harassing others at the facility with inappropriate sexual conversation that was known to supervisors, and REHAB CENTER also had actual knowledge that Ford was waiting around in the men's locker room on the days that THOMAS was scheduled to work.  The fact that Ford has a prior criminal background, was recently released from prison, and had engaged in sexual harassment of persons on the premise and posed an imminent threat of sexual misconduct and violence, was not open and obvious and could not have been known to THOMAS; therefore, Defendant REHAB CENTER had a duty to warn persons on the premise including Plaintiff THOMAS and her employer Defendant JVS for her protection, and to otherwise take reasonable steps to protect Plaintiff THOMAS.

66.     Despite prior knowledge and notice, the REHAB CENTER breached said duty when they negligently assigned and/or allowed THOMAS to clean the men's locker room without supervision and on June 27, 2019, Ford cornered THOMAS in the locker room, and with his fingers penetrated her vagina and inserted his penis into her buttocks. The REHAB CENTER had actual knowledge of Ford's past conduct and coupled with his comments, and it either knew or should have known that the danger Ford posed was imminent.  Therefore, the injury to THOMAS was both foreseeable and preventable. But for the REHAB CENTER's negligent acts and negligent failures to act, THOMAS would not have been subjected to the sexual abuse, harassment, assault, and battery, by Ford.

67.    Plaintiff's injuries were the direct and proximate result of the carelessness and negligence of Defendant REHAB CENTER, its agents, servants, employees, and workers as follows:

(a) failing to properly supervise Ford;

(b) failing to protect THOMAS from sexual abuse by Ford, a student under its control and supervision.

(c) failing to develop and implement proper policies and procedures that would prevent sexual misconduct, and specifically failed to protect THOMAS from sexual abuse by Ford, a student under its control and supervision.

(d) failing to properly train its employees and/or agents in procedures that would prevent sexual misconduct;

(e) failing to implement policies and/or procedures that would prevent such misconduct and protect its fellow students and employees;

(f) failing to place signage closing the locker room during cleaning, or otherwise prevent or notify students and persons on the premise that it was closed for cleaning;

(g) failed to create and enforce procedures and policies to prevent and/or deter sexual misconduct by students of the REHAB CENTER, specifically sexual misconduct directed towards THOMAS, a disabled person while on the premises of REHAB CENTER;

(h) failing to implement policies that would assure the locker room be vacant while it was being cleaned, since they were aware that THOMAS, a disabled black woman was assigned to clean it;

(i) failing to establish a policy that required supervision of the persons that were assigned to clean the locker room of the opposite sex, knowing that generally the employees who worked as janitors inside the facility, were disabled; and

(j) such other negligence as may be revealed through discovery.

68. The sexual abuse, sexual assault, and sexual battery and the resulting injuries and damages suffered by THOMAS, were reasonably foreseeable due to REHAB CENTER's own failures in ensuring compliance with the law. The REHAB CENTER failed to take proper action to protect THOMAS from the foreseeable harm that she would be sexually abused, assaulted, and battered, inside its premises.

69. As a direct and proximate cause of the REHAB CENTER's breach of its numerous duties owed to THOMAS, she sustained ongoing and permanent injuries and damages. THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

70. WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendant REHAB CENTER in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

## COUNT VII
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION OF DEFENDANT, REHAB CENTER'S AGENTS AND/OR EMPLOYEES

71. Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

72.     The REHAB CENTER owed a duty to Plaintiff, THOMAS, to act in a reasonably safe manner and to properly hire, train, and supervise its employees and/or agents for the protection of all persons inside its premises, and to prevent its employees and/or agents from injuring persons inside its premises through intentional acts, negligence, carelessness, or otherwise. Additionally, the REHAB CENTER owed a duty to those on its premise not to engage in negligent hiring of its employees; and breached said duty by failing to hire competent staff, failing to conduct appropriate background checks and/or otherwise properly investigate into the background of its staff.

73.     The sexual battery of THOMAS by Ford, a REHAB CENTER student, in the care, custody, control and supervision of the REHAB CENTER's employees was caused by the REHAB CENTER's failure to properly hire, train, supervise, and retain its employees and/or agents who worked alongside THOMAS.

74. The REHAB CENTER is in the practice of working and rehabilitating physically and mentally disabled students, therefore, the REHAB CENTER should have known that untrained and incompetent staff would create a danger to its students.

75.     The REHAB CENTER's failure to properly examine the qualifications of its potential staff members prior to hiring, led to the hiring of incompetent and unqualified staff which caused the injuries to THOMAS.

76.     The REHAB CENTER also owed a duty to properly train its employees, and breached that duty when it failed to properly train its staff on proper procedures and policies to protect the interest of the persons present on its premise, especially the persons with visual and verbal impairments, to keep them safe from harm including sexual violence, and failed to train staff on how to supervise the students.

77. The REHAB CENTER's lack of training is evidenced in the fact that there were multiple staff members whom were aware of the comments that Ford had made before his attack on THOMAS, yet, no staff members acted in a way that would have prevented such an attack. The REHAB CENTER failed to train its employees and/or staff members on how to approach situations and students with criminal backgrounds and manifesting signs of a sexual predator like Ford.

78. The REHAB CENTER also failed to properly train its staff on protocol and procedure for closing bathrooms during cleanings and/or ensuring that there was more than one person cleaning the locker room at a time, and/or ensuring that women were protected while cleaning the men's locker room. The REHAB CENTER's failure to properly train its staff resulted in the failure to act on behalf of the REHAB CENTER, which led to THOMAS' sexual battery or rape inside of the REHAB CENTER's men's locker room.

79. The REHAB CENTER also owed a duty to properly supervise its staff, but failed to properly supervise its employees and ensure that the employees were supervising the students, properly reporting bad acts, threats, and sexually harassing misconduct, and failed to develop proper protocol for reporting and taking actions through its supervisory procedures. Butler, the Superintendent, the physical education instructor, and all other staff were made aware of Ford's comments and should have been properly trained to supervise to Ford in light of the imminent danger of sexual violence he posed, remove him from the school, or alert the proper authorities and would have prevented Ford from escalating his behavior to commit sexual battery on mentally disabled THOMAS.

80. The REHAB CENTER also failed to properly supervise its staff and students and to ensure bathrooms were closed during cleanings and/or ensuring that there was more than one

person cleaning the locker room at a time, and/or ensuring that women were protected while cleaning the men's locker room.

81.     The REHAB CENTER had actual knowledge of Ford's past conduct and coupled with his comments, and it either knew or should have known that the danger Ford posed was imminent.  Therefore, the injury to THOMAS was both foreseeable and preventable. But for the REHAB CENTER's negligent acts and negligent failures to act, THOMAS would not have been subjected to the sexual abuse, harassment, assault, and battery, by Ford.

82.     The REHAB CENTER's numerous actions and omissions listed above, actually and proximately caused THOMAS' sexual battery resulting in her ongoing and permanent injuries and damages. THOMAS was sexually abused and battered by Ford, a student within the custody, care and/or control of the REHAB CENTER due to the negligence of the REHAB CENTER agents and/or employees

83.     As a direct and proximate cause of the REHAB CENTER's breach of its numerous duties owed to THOMAS, she sustained ongoing and permanent injuries and damages.  THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

84.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendant REHAB CENTER in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

## COUNT VIII
## GENERAL NEGLIGENCE, NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION AGAINST DEFENDANT JVS AND DEFENDANT JVM

85.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

86.     JVS and JVM were in the practice of placing people with disabilities into several different assignments with different facilities. JVS and JVM had actual prior knowledge of THOMAS' disability as well as her verbal impairments.

87.     This prior knowledge of THOMAS' disability put the agents and/or staff at JVS on notice that THOMAS' placement would require extra responsibility in determining that it was adequately safe for THOMAS to work there.

88.     Despite JVS and JVM's knowledge of the circumstances surrounding THOMAS' disability and without regard to her safety, JVS and JVM placed THOMAS to work at a facility without any investigation into the facility's safety record, safety policies, and/or any investigation as to the students that were matriculated at the REHAB CENTER.

89.     JVS and JVM failed to require that the REHAB CENTER notify JVS and JVM when students or persons on its property and/or in their custody and/or control had criminal records or posed a threat of sexual and/or physical violence to others.

90.     JVS had a duty to properly screen the locations in which it placed its employees to ensure their safety.  In addition, JVS and JVM specifically placed THOMAS at the REHAB CENTER as a janitor in the men's locker room without any safety requirements, policies and/or procedures that would ensure THOMAS' safety.

91.     JVS and JVM failed to take reasonable and adequate safety and security measures to prevent the sexual abuse of their employees and/or staff. JVS and JVM failed to implement policies and/or procedures to keep mentally disabled employees safe and/or to prevent their

exposure to sexual battery and physical violence during the course and scope of their employment. JVS failed to take reasonable safety and security measures to protect THOMAS during her employment and prevent an attack on her person that resulted in her sexual abuse and battery.

92.     JVS and JVM failed to properly train and supervise its employees and/or agents who place the job assignments, including its employee that assigned THOMAS to work at the REHAB CENTER.

93.     THOMAS was assigned to work at the REHAB CENTER through JVS and JVM, and therefore JVS and JVM had an affirmative duty to protect all persons, especially its visually and mentally impaired employees from the sexual harassment, abuse, assault, and sexual battery she sustained at the facility.  JVS and JVM knew that their employees who were providing cleaning services were mentally disabled persons, and JVS and JVM negligently failed to take measures to train and/or supervise their employees to ensure THOMAS' safety while she cleaned the men's locker room unsupervised, and did nothing to protect THOMAS from the foreseeable and preventable sexual abuse.

94.     Despite prior knowledge and notice, JVS and JVM negligently assigned THOMAS to clean the men's locker room without supervision, and at the time THOMAS was assigned to perform janitorial services at the REHAB CENTER, both JVS and JVM failed in the following duties owed to Plaintiff Chassity Thomas:

      (a) failed to implement safety precautions for THOMAS;

      (b) failed to properly train its employees and/or agents in procedures that would assure the safety of its disabled employees while assigned at other facilities and prevent sexual misconduct;

      (c) failed to implement policies and/or procedures that would prevent such misconduct;

2a4c312eb2dceddc

(d)  failed to implement policies and/or procedures to ensure that the REHAB CENTER had a policy to require the locker room to be vacant while it was being cleaned;

(e)  failed to provide THOMAS with signs to close the restroom, or objects to place in the doorway to obstruct entrance to the bathroom during cleaning, since they were aware that THOMAS, a disabled woman was assigned to clean it;

(f)  failed to establish a policy that required the supervision of its own employees, especially the mentally disabled persons that were assigned to clean the locker room of the opposite sex;

(g)  failed to promulgate adequate policies and procedures to protect its employees with known disabilities;

(h)  failed to require the REHAB CENTER to report any person on its premise with a known criminal history and/or any known sexual misconduct to JVS for the safety of its employees;

(i)  failed to require more than one employee clean the restroom together for safety, knowing that generally the employees who worked as janitors inside the facility are disabled; and

(j)  such other negligence as may be revealed through discovery.

95.    JVS and JVM's numerous actions and omissions listed above, actually and proximately caused THOMAS' sexual battery resulting in her ongoing and permanent injuries and damages. THOMAS was negligently placed on the premises of the REHAB CENTER by JVS and JVM. THOMAS was sexually abused and battered by Ford, a student within the custody, care and/or control of the REHAB CENTER due to the negligence of the JVS and JVM's agents and/or employees, who negligently placed THOMAS inside the REHAB CENTER as a janitor.

96.     As a direct and proximate cause of JVS and JVM's breach of its numerous duties owed to THOMAS, she sustained ongoing and permanent injuries and damages.  THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

97.     WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian, NINA PHILLIPS, demands judgment for damages against Defendants JVS and JVM in excess of the jurisdictional limits of this court, together with interest, attorneys' fees and costs.

**COUNT IX**

**SEXUAL BATTERY AGAINST DEFENDANT FORD**

98.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

99.     Defendant FORD was an adult male.

100.    On June 27, 2019, Defendant FORD attacked Plaintiff CHASSITY THOMAS while she was performing janitorial services in the men's locker room at Defendant REHAB CENTER, and penetrated her vagina and her anus with his penis, constituting unwanted touching of her person and unwanted sexual penetration against Plaintiff THOMAS' will.

101.     Plaintiff THOMAS did not consent to any form of sexual contact; and, she lacked legal capacity to consent sexual activity due to her mental disability, including but not limited to, down syndrome.  Plaintiff THOMAS mental disability was obvious and known to Defendant FORD.

102.    As a result, Defendant FORD committed an unwanted sexual battery upon Plaintiff THOMAS actually and proximately causing her to suffer ongoing and permanent injury and damages, including but not limited to: THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

## COUNT X

## SEXUAL BATTERY AGAINST REHAB CENTER

103.    Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

104.    At all times material hereto, Defendant REHAB CENTER as a residential facility had care, custody, and control of Defendant FORD, a visually impaired adult male recently released from prison.

105.    Despite having actual knowledge of Defendant FORD's criminal history, and the fact that threat of sexual violence he posed to others was imminent, as he sexually harassed persons on the campus by making verbal sexualized statements about the fact that he was seeking sexual intercourse that was known to supervisors, Defendant REHAB CENTER did not properly supervise him and/or remove him from the property for the safety of other persons including Plaintiff.   On June 27, 2019, Defendant FORD attacked Plaintiff CHASSITY THOMAS while she was performing janitorial services in the men's locker room at Defendant REHAB CENTER, and penetrated her vagina and her anus with his penis, constituting unwanted touching of her person and unwanted sexual penetration against Plaintiff THOMAS' will.   At all material times

29

during the subject incident, Defendant FORD was in the care, custody, and/or control of Defendant REHAB CENTER.

106.    Plaintiff THOMAS did not consent to any form of sexual contact; and, she lacked legal capacity to consent sexual activity due to her mental disability, including but not limited to, down syndrome.  Plaintiff THOMAS' mental disability was obvious and known to Defendant FORD.

107.    As a result, Defendant FORD committed an unwanted sexual battery upon Plaintiff THOMAS for which DEFENDANT REHAB CENTER is liable,  actually and proximately causing her to suffer ongoing and permanent injury and damages, including but not limited to: THOMAS was subjected to sexual abuse, sexual battery, and endured emotional distress, severe psychological injuries, humiliation, mental anguish, which has manifested into episodes of acting out, restlessness, anxiety; shock and fright; embarrassment; loss of everyday social pleasures and enjoyment; and other injuries and disablements which have yet to manifest themselves at this time which have all resulted in medical bills, loss of future earning potential, as well as other expenditures that will be incurred in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CHASSITY THOMAS, by and through her legal guardian NINA PHILLIPS, individually respectfully requests that this Court award the following damages, jointly and severally against Defendants, REHAB CENTER, JVS, JVM, and FORD as provided by the Illinois law, including but not limited to the following:

(a)  Award compensatory damages to Plaintiff;

(b)  Award reasonable attorneys' fees and costs to Plaintiff;

(c)  Loss of past and future support and services with interest;

(d) Loss of past and future earnings;

(e) Punitive damages;

(f) Any and all relief pursuant to 42 U.S.C. Section 1988

(g) Any and all other and further relief as this Court may deem appropriate.

## **TRIAL BY JURY**

WHEREFORE, Plaintiff **CHASSITY THOMAS**, by and through her legal representative, NINA PHILLIPS, hereby demands a trial by jury on all issues so triable.

DATED this **_____ day of June 2020**.

Respectfully Submitted,

 _*/s/ Lester Barclay*_____
Lester Barclay, Esquire
ARDC#: 61894868
**THE BARCLAY LAW GROUP, P.C.**
111 W Washington Street #1042
Chicago, IL 60602
(312) 553-0123 Telephone
(312) 553-0127 Facsimile
*Attorney for Plaintiff*