**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHASSITY THOMAS, by and through her )
legal guardian, NINA PHILLIPS, )
                                     )
          Plaintiff, )
                                     )     No. 20-cv-03498
     v. )
                                     )     Judge Andrea R. Wood
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES, et al., )
                                     )
         Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Chassity Thomas, an adult woman with Down syndrome, was employed as a janitor by Jewish Child and Family Services ("JCFS"), doing business as Jewish Vocational Services. Thomas alleges that she was sexually assaulted while cleaning a locker room at the Illinois Center for Rehabilitation and Education ("Rehab Center"). As a result, she has sued JCFS, the Illinois Department of Human Services ("IDHS"), the Jewish Federation of Metropolitan Chicago ("JFMC"), and her alleged assailant, Edward Ford. Now before the Court are JCFS's motion to dismiss Thomas's claims against it (Dkt. No. 38), Thomas's motion to strike JCFS's motion to dismiss (Dkt. No. 49), IDHS's motion to dismiss all of Thomas's claims against it (Dkt. No. 43), JFMC's motion for summary judgment (Dkt. No. 54), JFMC's motion for sanctions against Thomas (Dkt. No. 57), and Thomas's motion for sanctions against JCFS (Dkt. No. 65). For the reasons given below, the Court grants IDHS's motion to dismiss and denies the remaining motions.

**BACKGROUND**

For purposes of JCFS's and IDHS's motions to dismiss, the Court accepts all well-pleaded allegations in Thomas's First Amended Complaint as true and draws reasonable inferences in her favor. *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). The Court does not vouch for the accuracy of those allegations, however. *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).[1] The First Amended Complaint alleges as follows.

Thomas is a 32-year-old Black woman with Down syndrome who experiences visual and verbal impairments. (First Am. Compl. ("FAC") ¶¶ 9, 32, Dkt. No. 24.) She worked as a janitor for JCFS, an employment agency that "specializes in finding employment positions for disabled persons." (*Id.* ¶ 9.) JCFS was aware of Thomas's disabilities. (*Id.* ¶ 10.)

As a JCFS janitor, Thomas provided cleaning services at the Rehab Center, a Chicago-based residential school serving people with severe physical disabilities. (*Id.* ¶¶ 2, 9.) The Rehab Center was owned or operated by IDHS, an Illinois state agency. (*Id.* ¶ 2.) Thomas was assigned to clean the men's locker room at the Rehab Center, which she did without supervision. (*Id.* ¶ 10.) Neither JCFS nor IDHS assigned anyone to supervise Thomas when she cleaned bathrooms or the locker room, nor did they ensure that those spaces were empty before she cleaned them. (*Id.* ¶ 11.)

Ford was a student at the Rehab Center, who made inappropriate sexualized remarks to staff and other persons there. (*Id.* ¶ 12.) Even though the Rehab Center's superintendent received reports about Ford's threatening and sexualized comments, Ford was allowed to remain at the Rehab Center without supervision. (*Id.* ¶¶ 13, 18–19.) Further, the physical education instructor at the Rehab Center had been informed that Ford waited in the locker room for long periods of time

---

[1] And, of course, Thomas's allegations are not accepted as true when the Court later considers JFMC's motion for summary judgment or the pending motions for sanctions.

when Thomas was scheduled to clean it. (*Id.* ¶ 14.) Yet the instructor did not ask Ford to leave the center or inform a supervisor of Ford's conduct. (*Id.*)

On June 27, 2019, Ford cornered Thomas in the locker room. (*Id.*) He sexually assaulted her, penetrating her vagina with his fingers and inserting his penis into her buttocks. (*Id.*) That same day, Thomas tried to report her assault to Rehab Center staff members but struggled to do so due to her disabilities. (*Id.* ¶ 15.) Instead of trying to understand why Thomas was upset and afraid, those staff members ignored her. (*Id.*) And JCFS suspended Thomas without pay for two days without investigating what happened. (*Id.*) Even after learning that Thomas had been sexually assaulted, JCFS did not compensate her for her unpaid suspension. (*Id.*)

On June 28, 2019, Thomas successfully communicated to a Rehab Center employee that Ford had sexually assaulted her. (*Id.* ¶ 16.) The Illinois State Police were called, Thomas underwent an emergency room "rape kit" examination, and a criminal investigation followed. (*Id.*)

JCFS never investigated the Rehab Center's safety record or safety policies. (*Id.* ¶ 22.) It also did not investigate whether the Rehab Center's students had criminal backgrounds or posed a risk of sexual misconduct. (*Id.*) Nevertheless, it allowed Thomas to work at the Rehab Center and to clean the men's locker room there without supervision. (*Id.*) JCFS did not require the Rehab Center to provide notice of the presence of potentially dangerous persons. (*Id.* ¶ 23.) JCFS also did not implement any safety requirements or policies to ensure Thomas's safety and never investigated the circumstances of Thomas's rape. (*Id.* ¶ 24.)

In March and April 2020, Thomas informed JCFS that she was pursuing legal claims against JCFS for discrimination based on her disability, race, and sex. (*Id.* ¶¶ 37, 54.) In April

2020, JCFS placed Thomas on an indefinite paid suspension. (*Id.*) JCFS informed Thomas's

mother that JCFS would inform her when, and if, Thomas could return to work. (*Id.*)

Thomas now asserts numerous claims against JCFS, IDHS, and JFMC. She contends that

JCFS discriminated against her based on her disability, race, and sex, and retaliated against her

when she communicated her intent to pursue legal action. She also claims that IDHS excluded her

from government programming based on her disabilities, denied her access to a place of public

accommodation, and is liable to her under several state-law causes of action. And finally, Thomas

claims that that JFMC was negligent under Illinois state law because it failed to protect her.[2]

## DISCUSSION

### I.      Claims Against JCFS

The Court turns first to Thomas's claims against JCFS. JCFS moves to dismiss all of

Thomas's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 38.) In

response, Thomas moves to strike JCFS's motion (Dkt. No. 49), contending that JCFS

impermissibly seeks to rely on additional evidence beyond the pleadings.

#### A.      Motion to Strike

With a few exceptions not applicable here, "[w]hen reviewing a motion to dismiss, the

court's inquiry is generally limited to the factual allegations contained within the four corners of

the complaint." *Stobinske-Sawyer v. Village of Alsip*, 188 F. Supp. 2d 915, 919 (N.D. Ill. 2002).

The Court cannot consider "matters outside the pleadings" in connection with a Rule 12(b)(6)

motion without converting that motion to "one for summary judgment under Rule 56." Fed. R.

---

[2] Thomas also asserts a claim against Ford for sexual battery (Count VIII). But he has not yet appeared in this matter and the claim against him is not the subject of any of the pending motions.

Civ. P. 12(d). And if matters outside the pleadings are considered, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Pursuant to Rule 12(d), Thomas moves to strike JCFS's motion to dismiss and to require JCFS to file a new motion for summary judgment under Federal Rule of Civil Procedure 56. In the alternative, Thomas moves to strike JCFS's motion pursuant to Rule 12(f) for containing "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Indeed, JCFS's motion to dismiss presents extensive factual detail beyond the allegations of the First Amended Complaint. JCFS even argues that Thomas's complaint should be dismissed for lack of evidentiary support—that is, because her allegations will not ultimately be proven—which is plainly improper for a motion to dismiss. *See Covington v. Ill. Sec. Serv., Inc.*, 269 F.3d 863, 865 (7th Cir. 2001). Yet JCFS has clarified that it does not ask the Court to consider any matters outside the pleadings. Rule 12(d) requires the Court to treat a motion to dismiss as a motion for summary judgment only if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Thomas has offered no reason why simply disregarding JCFS's additional material would not be an inadequate remedy.

Thomas also has not explained how JCFS's motion to dismiss contains "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Even when immaterial matters are pleaded, the Court can "with or without a motion to strike . . . eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record." *Prince v. Chi. Pub. Sch.*, No. 09-CV-2010, 2011 WL 3755650, at *2 (N.D. Ill. Aug. 25, 2011). So, instead of formally "striking" portions of JCFS's motion—a procedure that is generally disfavored, *see Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286,

1294 (7th Cir. 1989)—the Court simply disregards any factual allegations beyond the pleadings made by JCFS.

For these reasons, Thomas's motion to strike is denied.

### B. Count I: ADA Disparate Treatment and Retaliation

The Court next turns to the adequacy of Thomas's pleading. In Count I, Thomas claims that JCFS violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* in several ways: by providing her a less favorable job posting, failing to ensure a safe working environment, suspending her for two days without pay after she was sexually assaulted, and suspending her with pay indefinitely after she indicated her intent to pursue legal action. JCFS moves to dismiss Thomas's claims against it pursuant to Rule 12(b)(6).

As an initial matter, JCFS contends that Thomas has violated Federal Rule of Civil Procedure 10 by bunching multiple claims into a single count. "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). The main purpose of this rule is "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). As discussed below, Count I encompasses two separate claims. There are meaningful differences in the relief available under each claim: Thomas may seek compensatory and punitive damages for her ADA disparate treatment claim but not her ADA retaliation claim. *See Kramer v. Bank of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004). But ultimately, JCFS has received fair notice of Thomas's claims against it and the basis for those claims. Thus, there is no need to require Thomas to replead her claims via separate counts.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the Court need not accept a party's legal conclusions, and a party cannot defeat a motion to dismiss with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* This pleading standard does not require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

### 1.      Disparate Treatment

Count I asserts that JCFS violated the ADA by subjecting Thomas to disparate treatment based on her disability and by retaliating against her for complaint about it. Beginning with the disparate treatment claim, it is unlawful for a covered entity to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112. To prevail on her disparate treatment claim, Thomas will have to establish: "(1) that [she] is disabled within the meaning of the ADA; (2) that [she] is qualified to perform the essential functions of the job with or without accommodation; and (3) that [she] has suffered an adverse employment action because of [her] disability." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). JCFS does not dispute that it is a covered entity or that Thomas is disabled and qualified to perform her job's essential functions. Instead, it denies that Thomas has pleaded that she suffered an adverse employment action because of her disability.

To show that she has pleaded an adverse employment action adequately, Thomas first points to her work assignment. She alleges that JCFS reserved other more desirable, non-janitorial positions for non-disabled employees. Specifically, she alleges in the First Amended Complaint that (1) "[u]pon information and belief, Defendant [JCFS] did not assign non-disabled employees to clean bathrooms and/or locker rooms and/or to clean the men's locker room" and (2) "[JCFS] caused THOMAS to be sexually battered because [it] did not deem THOMAS worthy of protecting like [it] protect[s] [its] other non-disabled employees." (FAC ¶¶ 34, 35.) At the pleading stage, Thomas's allegations allow for the inference that IDHS had other non-disabled employees who were similarly situated but were not assigned to clean bathrooms and locker rooms—the men's locker room in particular. It can also be inferred from her allegations that Thomas's assignment to the men's locker room was undesirable—because the environment was unpleasant, unsafe, or both.

An unfavorable work assignment, by itself, generally would not constitute an "adverse employment action." *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002) ("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay."). But Thomas alleges that she suffered a decrease in pay when she was suspended without pay following her attempts to report her sexual assault. She alleges that she "was frantic and in distress and having difficulty communicating what transpired due to her verbal impairment" and that "[i]nstead of investigating the underlying cause of Thomas' [sic] distress, [JCFS] retaliated and discriminated against her for trying to report [her assault] and suspended her for two days without pay." (FAC ¶ 36.) A two-day suspension without pay plainly constitutes an adverse employment action. *See Whittaker v. N. Ill.*

*Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (describing a three-day suspension without pay as an example of an adverse employment action).

JCFS asserts that Thomas has not alleged that her suspension was caused by her disabilities, apparently suggesting that it would suspend any employee without pay for reporting a sexual assault. (JCFS denies that it suspended Thomas without pay, but the Court must accept her allegations as true at this stage.) But Thomas has plausibly alleged a connection: she alleges that JCFS decided to suspend her instead of trying to figure out what happened because of her limited communication abilities. As alleged, it can be inferred that JCFS decided it would be easier to suspend Thomas without pay than to determine the cause of her distress because of Thomas's disabilities. Thomas's other allegations are consistent with this theory: for example, she alleges that it was ultimately an IDHS employee, not JCFS, who determined that Thomas had been sexually assaulted. (FAC ¶¶ 15–16.)

JCFS also contends that because all of its employees are disabled—at least in the program in which Thomas participated—it could not have discriminated against Thomas based on her disabilities. But this argument requires the Court to discount Thomas's allegations, which suggest that JCFS also employed non-disabled workers who received better work assignments and more favorable treatment. JCFS posits that Thomas has pleaded herself out of court by alleging that "[JCFS] is an employment agency that specializes in placing disabled persons in the workforce." (*Id.* ¶ 33.) Not so: JCFS could specialize in employing disabled persons and still employ non-disabled workers. At the pleading stage, the Court does not consider whether Thomas will actually be able to identify non-disabled comparators and, if she cannot do so, whether that would

be fatal to her claims. For now, Thomas's allegations receive the benefit of all reasonable inferences in her favor and she has stated a claim for disparate treatment.[3]

### 2. Retaliation

The ADA also prohibits retaliation—specifically, adverse actions taken "because [an] individual has opposed any act or practice made unlawful by the ADA" or has initiated or participated in an ADA investigation or proceeding. 42 U.S.C. § 12203. To prevail on her ADA retaliation claim, Thomas must establish "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). "The category of actions prohibited by the [ADA's] anti-retaliation provisions is broader than the category of adverse employment actions prohibited by [its] anti-discrimination provisions." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). For purposes of a retaliation claim, a materially adverse action is one that would "dissuade[] a reasonable worker from engaging in protected activity." *Id.* at 901–02 (internal quotation marks and citation omitted).

JCFS does not contest that Thomas's act of asserting her legal rights was statutorily protected activity or that the short time period between her doing so and her indefinite paid suspension was proximate enough in time to suggest a causal connection. Instead, JCFS contends that Thomas has not pleaded an adverse action, asserting that because Thomas continued to receive her pay, she has not been materially harmed.

But an adverse action, in the context of federal antidiscrimination law, can include "transfers or changes in job duties that cause an employee's skills to atrophy and reduce future

---

[3] The Court will not take judicial notice of JCFS's website as proof of its actual employment practices, as JCFS urges. Those materials are both outside the pleadings and likely hearsay if offered for the truth of the matters asserted.

career prospects." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011); *see also Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 766 (N.D. Ill. 2020) (noting that "there is no question that refusing to allow a disabled employee to return to work—even when they are qualified for multiple open positions—is the type of conduct that would dissuade a reasonable worker from requesting accommodations in the future."). Making all reasonable inferences in Thomas's favor, being forced to "sit home for five months" could be expected to discourage her—and others—from opposing an employer's discrimination based on disability. (FAC ¶ 37.) The caselaw cited by JCFS is not to the contrary. *See Markel*, 276 F.3d at 911 (noting that adverse employment actions are generally economic but not reaching issue of whether university employee had suffered adverse employment action); *Vasquez v. City of Chicago*, No. 05 C 1639, 2006 WL 8459513, at *4–5 (N.D. Ill. May 23, 2006) (holding that a firefighter's three-day paid suspension was not adverse employment action because it did not "materially alter[] the terms and conditions of his employment" or constitute "a significant change in his employment status"); *Myart v. Doubletree Hotels Corp.*, No. 01 C 4083, 2002 WL 63814, at *5 (N.D. Ill. Jan. 17, 2002) (holding that three-day paid suspension of security officer was not adverse employment action). Thus, Thomas has stated a claim for retaliation under the ADA.

For the first time in its reply brief, JCFS also asks the Court to dismiss Thomas's claim to the extent she seeks damages for Ford's sexual assault. JCFS contends that any harm Thomas may have suffered based on JCFS's alleged acts of discrimination does not extend to her injuries from the sexual assault. But because JCFS raises this argument for the first time in its reply brief, the Court declines to consider it. *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made for the first time in reply.").

For these reasons, JCFS's motion to dismiss Count I is denied.

### C. Count III: Title VII Disparate Treatment and Retaliation

In Count III, Thomas claims that JCFS discriminated against her based on her race and sex by providing her with a less favorable job posting than those given to white employees and male employees, by failing to protect her to the same extent as white employees and male employees, and by suspending her with pay indefinitely after she indicated her intent to pursue legal action. Once again, JCFS contends that Thomas has improperly merged multiple claims into a single count. But as above, JCFS has ascertained the bases for Thomas's claims and offers no reason to conclude that it has been deprived of fair notice.

Thomas's disparate treatment and retaliation claims under Title VII parallel her ADA claims. To establish disparate treatment under Title VII, Thomas "must adequately allege that she suffered an adverse employment action that was motivated by discriminatory animus." *Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1062 (N.D. Ill. 2018); *see* 42 U.S.C. § 2000e-2(a)(1). To establish retaliation under Title VII, Thomas "must demonstrate that [s]he was engaged in statutorily protected expression, that [s]he suffered an adverse action by [her] employer, and that there was a causal link between the protected expression and the adverse action." *Silver v. Townstone Fin., Inc.*, No. 14-CV-1938, 2016 WL 4179095, at *5 (N.D. Ill. Aug. 8, 2016) (citing *Rennie v. Dalton*, 3 F.3d 1100, 1109 (7th Cir. 1993)); *see* 42 U.S.C. § 2000e-3(a). But at the pleading stage, Thomas "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex [or race]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). She need not "include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

Turning first to Thomas's disparate treatment claims, Thomas alleges that she received less favorable assignments than nonwhite and male employees because of her sex and race.[4] For the same reasons as discussed above, Thomas has plausibly alleged that her assignment to the men's locker room was less favorable than assignments received by other employees (here, as alleged, white employees and male employees). She also alleges that JCFS implemented safety precautions for those employees but not for her, and that JCFS has never suspended a non-Black woman for reporting sexual harassment or a sexual battery. (FAC ¶¶ 52–53.)

JCFS protests that Thomas's allegations are vague and cursory, and that JCFS, in fact, does not employ any white janitors at the Rehab Center. But even though Thomas's allegations are light on detail, the plain inference of her allegations is that JCFS implemented safety precautions that it did not extend to Thomas because of her race and sex, and that JCFS treated Thomas less favorably when she tried to report her sexual battery because of her race and sex. At the pleading stage, this is enough to state a claim; again, the Court reaches no conclusion regarding whether Thomas will ultimately succeed in proving her claim.

Likewise, Count III also states a claim for retaliation on the basis of race and sex. Thomas alleges that, in March and April 2020, she informed JCFS that she intended to pursue legal action against them for race and sex discrimination. In April 2020, she was placed on an indefinite unpaid suspension. Once again, JCFS's only argument in support of dismissal is that an indefinite unpaid suspension is not an adverse employment action. But that position lacks merit for the

---

[4] JCFS contends that Thomas will not be able to identify any white comparators because JCFS employed no white janitors at the Rehab Center location. But this argument relies on facts outside of the pleadings. And it is not clear whether JCFS employees working at other locations or in different roles could be treated as comparators to Thomas.

reasons discussed above. Thomas's indefinite paid suspension is the kind of action would discourage a reasonable employee from complaining about sex or race discrimination.

For these reasons, JCFS's motion to dismiss Count III is denied.

## II.     Claims Against IDHS

IDHS also moves to dismiss all of Thomas's claims against it pursuant to Rule 12(b)(6). (Dkt. No. 43.)

### A.     Count II: ADA Discrimination

In Count II, Thomas asserts that IDHS violated Title II of the ADA by discriminating against her and excluding her from the benefits of the Rehab Center's programs and services, and that IDHS violated Title III by discriminating against her. She now concedes that she cannot prevail on a Title III claim because IDHS is a public entity, while Title III only allows for claims against private entities. *See* 42 U.S.C. § 12181, *et seq.* IDHS contends that Thomas's Title II claim is also barred because (1) IDHS is immune from the claim under the Eleventh Amendment; (2) Thomas has not been excluded from participation or denied the benefits of its services, programs, or activities; and (3) IDHS has not discriminated against Thomas based on her disabilities.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Eleventh Amendment protects states from suits against them unless they consent to being sued. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). State sovereign immunity extends to state agencies like IDHS. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1964). Yet, in passing the ADA, Congress intended to abrogate state sovereign

immunity to the extent allowed by Section 5 of the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). Disability discrimination, however, does not fall under the Fourteenth Amendment unless it implicates some right protected under the Equal Protection Clause. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational.").

Thomas maintains that because she seeks to enforce fundamental constitutional rights through her Title II claim, Congress has validly abrogated Illinois's sovereign immunity and her claim may proceed. First, she asserts that her right to privacy was violated, bringing her claim under the Equal Protection Clause. But Thomas has only alleged that IDHS could have done more to protect her from being assaulted, not that IDHS took actions that invaded her privacy and autonomy. She cites no authority suggesting that her right to privacy can be leveraged to sustain what is essentially a claim for negligence—that IDHS should have taken steps to protect her from sexual harm, but did not. The cases cited by Thomas, which discuss the right to privacy and the violation of autonomy inherent to sexual assault, do not transform mere negligence into a harm of constitutional magnitude. *See Obergefell v. Hodges*, 576 U.S. 644 (2015) (right to same-sex marriage), *Lawrence v. Texas*, 539 U.S. 558 (2003) (right to consensual sexual activity), *Coker v. Georgia*, 433 U.S. 584 (1977) (describing rape as the "ultimate violation of self").

Second, Thomas suggests that IDHS violated her due process rights by wrongfully reporting her to JCFS, causing JCFS to suspend her without pay for two days. But a due process violation requires state action, and JCFS—the party that suspended Thomas—is not a state actor.

*See Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485–86 (1988) (discussing state action requirement for claims under the Due Process Clause). Thomas has failed to develop her argument that IDHS's actions rise to the level of a constitutional violation. It would be inappropriate for the Court to make further arguments on her behalf. *See Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999).

Because Thomas's claims are barred as a threshold matter by Illinois's sovereign immunity, the Court does not reach the issue of whether Thomas could make out a Title II claim if Illinois had waived its immunity. Count II is dismissed with prejudice.

### B.      Count IV: Title II Civil Rights

In Count IV, Thomas claims that the Rehab Center served as a place of public accommodation and that IDHS discriminated against her as a Black person "utilizing" or "performing" services at the Rehab Center, violating Title II of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.* IDHS moves to dismiss this claim because the Rehab Center, as alleged, is not a place of public accommodation; because Title II of the Civil Rights Act authorizes only injunctive relief; and because Thomas has not adequately alleged that she was injured by racial animus. Thomas did not address any of IDHS's arguments in her response brief. Thus, because she has waived argument (and the Court agrees with IDHS's reasoning) Count IV is dismissed. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

### C.      Counts V, VI, and IX: State-Law Claims

Thomas asserts three state-law tort claims against IDHS: premises liability (Count V), negligent hiring, training, supervision, and retention (Count VI), and sexual battery (Count IX). IDHS contends that the Court should relinquish jurisdiction over these claims because Thomas's

federal claims fail, or, in the alternative, that they should be dismissed because of IDHS's sovereign immunity.[5]

As discussed above, the Eleventh Amendment bars suits brought against the States without their consent. The only exceptions are where Congress has validly exercised its legislative power to abrogate immunity, when a state has waived its immunity, or when a party seeks prospective injunctive relief. *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). Thomas's only theory for why her claims may proceed is that Illinois has waived its immunity pursuant to the Court of Claims Act, 705 ILCS 505. But the Act provides that "[t]he [Court of Claims] shall have ***exclusive*** jurisdiction to hear and determine . . . [a]ll claims against the State for damages sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (emphasis added). The Act waives immunity only for claims brought before the Illinois Court of Claims. Thus, Illinois has not stated its intent to waive its immunity against suit in federal court "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Because Illinois has not waived its sovereign immunity here, Counts V, VI, and IX, must therefore be dismissed with prejudice.

### III.    Count VII: Negligence Against JFMC

Thomas claims that JFMC failed to ensure the safety of the disabled participants in its programs and was therefore negligent in causing Thomas's sexual assault. JFMC moves for summary judgment on this claim, contending that (1) JFMC is merely a donor to JCFS and

---

[5] Because Thomas's federal claims against other parties survive, the Court has no obligation to relinquish supplemental jurisdiction over Thomas's state law claims. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) (quoting 28 U.S.C. § 1367(c)(3)).

therefore cannot be held liable, and (2) even if JFMC were Thomas's employer, Thomas's claim would be barred under the Illinois Worker's Compensation Act, 820 ILCS 305/5(a).

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, Federal Rule of Civil Procedure 56(d) allows the Court to deny or defer consideration of a motion for summary judgment when "[the] nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Summary judgment should not be entered "until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Ill. State Emps. Union, Council 34 v. Lewis*, 473 F.2d 561, 565 (7th Cir. 1972). And the Court may deny a Rule 56(d) motion based on "(1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019).

Thomas asks the Court to deny or defer consideration of JFMC's motion. Consistent with Rule 56(d), Thomas's counsel has filed a declaration explaining that JFMC refused to participate in formal discovery prior to the filing of its summary judgment motion, thereby denying her the opportunity to verify or contradict the facts presented in the motion. (Pl.'s Resp. to JFMC's Statement of Facts, Ex. 1, Jasmine Reed Decl. ¶¶ 2–3, Dkt. No. 60-1.) JFMC has not denied that it withheld discovery before filing its motion, but instead contends that Thomas should not be allowed to obtain discovery based on a frivolous complaint. Because Thomas has diligently pursued discovery, her request to deny JFMC's motion for summary judgment should be granted unless the discovery she seeks would be futile.

JFMC's motion for summary judgment hinges on a question of fact: is JFMC merely a funder of JCFS, or is it more closely involved in Thomas's employment such that it could be found negligent? On this issue, JFMC relies on declarations from JCFS's Chief Financial Officer (Dkt. Nos. 56-3, 56-7), JFMC's Vice President of Human Resources (Dkt. No. 56-4), and JFMC's Senior Vice President of Planning and Allocations (Dkt. Nos. 56-6, 56-8, 56-10). Through these declarations, JFMC attempts to establish that it cannot be held liable for negligence because it has no legal partnership or parent-subsidiary relationship with JCFS and is not involved with JCFS's programming.

Because JFMC relies on declarations to support its position but has not given Thomas the chance to test its assertions through discovery, it is inappropriate to grant summary judgment at this time. The unfairness of JFMC's approach is demonstrated by a dispute over a document titled "Principles of Affiliation," which has not been produced to Thomas. JFMC offers a declaration stating that this document "addresses the joint fundraising efforts of and financial relationship between JFMC and . . . JCFS" and that "[n]either JFMC nor JCFS has signed the document, and it does not create a partnership or parent/subsidiary relationship between the entities." (JFMC's Statement of Material Facts, Ex. 10, Decl. of Deborah Covington ¶ 3, Dkt. No. 56-10.) But the content and implications of that document are properly determined by reviewing the document itself, not a declarant's statements regarding its contents. And Thomas can hardly dispute JFMC's description of the document when she has not been provided access to it. Because JFMC has relied on declarations from its staff members without providing the discovery necessary to test the facts asserted, JFMC's motion for summary judgement is premature and cannot be granted.

JFMC protests that engaging in discovery will require it to incur needless costs in response to frivolous litigation. But the proper course for JFMC would have been to move to

dismiss Thomas's complaint (if the pleadings are insufficient to support liability) or to participate in targeted discovery and file an early motion for summary judgment based on the resulting evidentiary record. JFMC has not justified its decision to move for summary judgment while completely withholding discovery. Thus, JFMC's motion for summary judgment must be denied.

## IV.     Motions for Sanctions

The Court turns next to the sanctions motions. JFMC moves for sanctions against Thomas (Dkt. No. 57), and Thomas moves for sanctions against JCFS (Dkt. No. 65). JFMC and Thomas base their motions on Federal Rule of Civil Procedure 11(b), which requires an attorney to certify to the best of her knowledge, information, and belief, formed after a reasonable inquiry, that a filing "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). A party or a party's attorney may be sanctioned based on "frivolousness," which is determined by assessing whether "the party or attorney made a reasonable inquiry into the facts . . . [and] into the law." *Ins. Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1358 (7th Cir. 1989). They may also be sanctioned based on "improper purpose," which weighs whether a filing was motivated by "delay, harassment, or [to] increase[e] the costs of litigation." *Brown v. Fed'n of State Med. Bds.*, 830 F.2d 1429, 1436 (7th Cir. 1987). Where a court determines that Rule 11(b) has been violated, it may impose a reasonable sanction against the party that violated the rule. Fed. R. Civ. P. 11(c)(1).

In addition to moving under Rule 11(b), JFMC also seeks sanctions under 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Under § 1927, sanctions are proper "where [an] attorney has acted in an objectively unreasonable

manner by engaging in a 'serious and studied disregard for the orderly process of justice.'" *Walter*

*v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (quoting *Overnite Transp. Co. v. Chi. Indus. Tire*

*Co.*, 697 F.2d 789, 795 (7th Cir. 1983). In particular, "[i]f a lawyer pursues a path that a

reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the

conduct is objectively unreasonable and vexatious." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.

1985).

### A.     JFMC's Motion for Sanctions

JFMC contends that Thomas's claim against it is baseless because JFMC did not

participate in any of the events that form the basis for Thomas's suit. Instead, JFMC insists, its

only relationship to the matter is as one of JCFS's funders, not as an entity providing employment

services in any way. JFMC asserts that it has tried many times to convince Thomas of its non-

involvement. Unsuccessful, JFMC now moves for sanctions, asserting that Thomas's negligence

claim against it in her First Amended Complaint was brought for an improper purpose and does

not reflect a reasonable inquiry into the facts and the law.

Thomas's initial complaint alleged that JFMC and JCFS were partners and jointly asserted

claims against them under the ADA, Title VII, and state common law. JFMC communicated to

Thomas that there was no partnership relationship and JFMC therefore was not jointly liable for

JCFS's conduct. In response, Thomas amended her complaint, dropping its allegations that JCFS

and JFMC were partners but asserting a new claim for negligence against JFMC alone. JFMC

continues to maintain that its only relationship to JCFS is as a donor and that no legal duty arises

from that relationship.

JFMC contends that Thomas's claims are motivated by an improper purpose. Specifically, it asserts that it is only being sued because Thomas cannot pursue negligence claims against JCFS due to the exclusivity clause of the Illinois Worker's Compensation Act, which precludes employees from seeking compensation from their employers for accidental job-related injuries except through procedures prescribed by the Act (with exceptions not applicable here). 820 ILCS 305/5(a); *see Albright v. Am. Greetings Corp.*, No. 19-CV-4853, 2020 WL 3303001, at *3–4 (N.D. Ill. June 18, 2020). JFMC also complains that Thomas has "threatened" to contact the press regarding Thomas's assault. But although JFMC plainly believes that Thomas's claims against it lack merit, JFMC has yet to establish as much. The factual and legal merits of Thomas's position have not yet been determined. Further, although JFMC may have experienced Thomas's "threats" to seek press coverage as extortive, JFMC has provided no evidence that Thomas has threatened to do anything unlawful or that otherwise rises to the level of sanctionable conduct. For example, JFMC has not provided evidence that Thomas has threatened intentionally to provide the media with false information about the harm she experienced.

JFMC also contends that it had to educate Thomas's counsel about basic principles of Illinois employment law, demonstrating her counsel's failure to reasonably investigate the law. Certainly, Thomas's claims, including her negligence claim against JFMC, could have been more artfully drafted. And Thomas's initial complaint included some claims that were not viable and were subsequently amended. But JFMC's motion targets Thomas's First Amended Complaint, which corrected the initial deficiencies that JFMC identified. Further, Thomas's claim against JFMC survives for now and may yet prove to have merit. Thus, it would be premature to determine that Thomas's claim was not supported by an adequate investigation into the law.

JFMC further accuses Thomas of "deceptively" asking it to produce a declaration from its staff to decide whether to dismiss her claims against JFMC, but then using that declaration to support a negligence claim against JFMC. (*See* JFMC Mot. for Sanctions, Ex. C, Covington Decl., Dkt. No. 58-3.) Relatedly, it contends that Thomas misrepresented to the Court that it had not received any documentation from JFMC and JCFS regarding the relationship between them. But the record does not indicate that Thomas's conduct was deceptive. It is equally possible that Thomas sought the declaration in good faith, and still ultimately concluded that the information was not good enough to justify dropping JFMC from the First Amended Complaint. Further, the record of the status hearing of which JFMC complains reveals that Thomas did not make a misrepresentation to the Court; instead, she reported that she found JFMC's affidavits insufficient to establish the extent of the JFMC-JCFS relationship and that JFMC had not provided the preliminary discovery that Thomas requested. (*See* JFMC's Statement of Facts, Ex. 15, Nov. 9, 2020 Status Hr'g Tr. 9:4–20, Dkt. No. 56-15.) JFMC maintains that Thomas should have been satisfied by JFMC and JCFS's Certificates of Good Standing, which establish that the two are separate entities. But those documents do not conclusively demonstrate the lack of a legal partnership or parent-subsidiary relationship. And they certainly do not show that JFMC was not involved in Thomas's employment. Here again, although it may later be shown that Thomas's claim against JFMC was unfounded and sanctionable, the present record does not allow for that determination.

Finally, JFMC asserts that Thomas's stepfather, Derrick Phillips, was the superintendent of the Rehab Center who allegedly failed to prevent Thomas from being assaulted, and that Thomas's failure to mention this fact is another basis for sanctions. But JFMC offers no reason

why Thomas was obligated to mention this fact. That fact is tangential to Thomas's claim and holds no clear relevance.

Simply put, the record does not establish that Thomas's counsel violated Rule 11 by failing to investigate her claim against JFMC adequately, that she filed the First Amended Complaint for an improper purpose, or that her litigation conduct has been objectively unreasonable. For these reasons, the Court denies JFMC's motion.

### B.    Thomas's Motion for Sanctions

Thomas has also moved for sanctions against JCFS. She contends that JCFS improperly attached settlement communications in support of its motion to dismiss, violating Rule 408 of the Federal Rules of Evidence. That Rule prohibits a party from using conduct or statements made in trying to settle a claim "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Apparently, Thomas's counsel believes that the disclosure of this communication was "abusive" and "unethical." But even if the communication was improperly used, no harm was done; the Court did not rely on the letter in deciding JCFS's motion to dismiss and, more importantly, the cited language did not include any scandalous material or concessions regarding the merits or value of the claims. The Court declines to find that such a single disclosure of a limited passage from a settlement communication rises to the level of a Rule 11 violation. Without more, the Court will not impose sanctions. Thomas's motion is denied.

### CONCLUSION

For the above reasons, JCFS's motion to dismiss (Dkt. No. 38) is denied. IDHS's motion to dismiss (Dkt. No. 43) is granted. JFMC's motions for summary judgment (Dkt. No. 54) and for

sanctions (Dkt. No. 57) are denied. And Thomas's motions to strike (Dkt. No. 49) and for sanctions against JCFS (Dkt. No. 65) are denied.

ENTERED:

Dated: September 28, 2021

_____
Andrea R. Wood
United States District Judge